UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| ALTA TOWERS, LLC, | § | |
| *Plaintiff*, | § | |
| v. | § | Civil Action No. 5:16-cv-00726-XR |
| THE CITY OF NEW BRAUNFELS; THE CITY OF NEW BRAUNFELS ZONING BOARD OF ADJUSTMENT, | § | |
| *Defendants*. | § | |

**ORDER**

On this day, the Court considered Defendants' Partial Motion for Summary Judgment as to Count 1 of Plaintiff's Complaint, and Plaintiff's Cross-Motion for Summary Judgment as to Counts 1 and 3. For the reasons that follow, Defendants' Motion as to Count 1 is GRANTED, and Plaintiff's Cross-Motion as to Counts 1 and 3 is DENIED.

**BACKGROUND**

Plaintiff Alta Towers, LLC, filed a Complaint in this Court seeking declaratory and injunctive relief against Defendants, The City of New Braunfels ("the City") and The City of New Braunfels Zoning Board of Adjustment ("the Zoning Board"). The events giving rise to this Complaint are Plaintiff's application to the City Planners ("the Planners") for the construction of a 150-foot-tall "stealth" telecommunications tower, the Planners' denial of that application, Plaintiff's appeal to the Zoning Board of that denial, and the Zoning Board's affirmance of the Planners' denial. Docket no. 1.

Plaintiff is a company that builds and manages telecommunications towers. Docket no. 36 at 1. Plaintiff alleges that after a thorough investigation, its client, Verizon, determined that

1

there was a significant coverage gap in the area surrounding the location of Plaintiff's proposed tower. Docket no. 1 at 5. In September 2015, Plaintiff entered a lease agreement with the owner of the property on which Plaintiff planned to site its tower. Docket no. 35-5. The following October, Plaintiff submitted its application to the Planners for administrative approval. Docket no. 35 at 1-2. Plaintiff sought this approval pursuant to the following local ordinance: "Administrative approval for the following towers may be obtained by submitting the required information to the planning department . . . . In any commercial or industrial zoning district, the installation of a *stealth tower* that is 150 feet in height or less . . . ." New Braunfels, Texas, City Code §§ 5.7-4, 5.7-4(b)(2) (emphasis added). "If the applicant meets the requirements of this chapter, administrative approval for the tower location shall be granted by the planning department, and the applicant may apply for the building permit." *Id*. § 5.7-5(e). The parties agree that if Plaintiff's proposed tower were to qualify as a "stealth tower" under the City Code ("the Code"), administrative approval must be granted. It is also undisputed that the Code does not define the term "stealth tower."

Plaintiff's proposal is for a 150-foot-tall "slimline monopole with interior antennas." Docket no. 36-5 at 3. It is designed to hide the fact that it is a telecommunications tower, and as such, it looks like a large flagpole. Encased within the flagpole are the cables and antennas that telecommunications carriers use to provide wireless service to consumers. The land already leased by Plaintiff, on which it proposed to build its tower, is commercially zoned.

Early in March 2016, one of the Planners, in an email to Plaintiff's lawyer, requested photo simulations of what the tower would look like in its proposed location. Docket no. 35-12 at 6. Plaintiff complied with this request. *See* Docket no. 35-13 at 4. On April 8, 2016, the Planners sent Plaintiff an email, stating: "your proposed monopole tower does not qualify as a stealth

wireless communications tower as required by City ordinance for administrative consideration . . . [it] would, therefore, require approval of a [special use permit] . . . ." *Id.* On April 12, 2016, Plaintiff submitted a revised application, which included the addition of a US flag to the top of the tower in the photo simulations. The next day, Plaintiff sent another email to the Planners, attaching "some information on two similar flag pole installations in New Braunfels for reference." Docket no. 36-12 at 2. It is undisputed that the two similar towers referenced in that email are essentially identical in height and design to Plaintiff's proposed tower. The parties also agree that those two towers are located in New Braunfels, and that they were granted administrative approval through the same provisions of the Code now at issue. Further, like Plaintiff's proposed tower, the two existing towers are located on commercially zoned properties.

On April 19, the Planners sent Plaintiff another email, again asserting that the proposed structure did not qualify as a "stealth tower" under the Code:

> [Y]our proposed monopole tower does not qualify as a stealth wireless communications tower as required by City ordinance for administrative consideration. To be stealth, the tower must blend into its contextual surroundings rather than prominently stand out. It is staff's opinion that a 150-foot tall monopole tower with a flag on it, does not blend into your proposed location: a highly visible gateway to the Gruene National Register Historic District. It would dominate the skyline of the immediate vicinity and be visible (in some cases unobstructed) to residents in the nearby surrounding neighborhoods.

Docket no. 36-18 at 2.

Plaintiff subsequently filed an appeal with the Zoning Board, and a public hearing was held. During the hearing, Plaintiff's lawyer presented information as to why the proposed structure constitutes a "stealth tower" and how the tower would benefit the City. At the end of the hearing, the Zoning Board unanimously voted to uphold the determination of the Planners, and several days later sent Plaintiff a letter, stating: "the Zoning Board of Adjustment adopted the reasoning contained in City Staff's written denial submitted to you on April 19, 2016, and

3

issued by Christopher Looney. Another copy of Mr. Looney's denial is attached for your records." Docket no. 36-18 at 1.

Plaintiff filed its Complaint with this Court in July 2016, seeking relief under three provisions of the federal Telecommunications Act. Defendants filed a Motion to Dismiss, which this Court denied in December 2016. In May 2017, Defendants filed a Motion for Summary Judgment as to Count 1 of the Complaint. Plaintiff subsequently filed a Cross-Motion for Summary Judgment as to Counts 1 and 3. Attached to Plaintiff's Motion is a lengthy appendix that details the communication between the parties, Plaintiff's initial proposal to the Planners, Plaintiff's appeal to the Zoning Board, and other evidence obtained in discovery.

## DISCUSSION

### I. Standard of review

The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). To establish that there is no genuine issue as to any material fact, the movant must either submit evidence that negates the existence of some material element of the non-moving party's claim or defense, or, if the crucial issue is one for which the non-moving party will bear the burden of proof at trial, merely point out that the evidence in the record is insufficient to support an essential element of the non-movant's claim or defense. *Lavespere v. Niagra Machine & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir. 1990). Once the movant carries its initial burden, the burden shifts to the non-movant to show that summary judgment is inappropriate. *See Fields v. City of S. Houston, Tex.*, 922 F.2d 1183, 1187 (5th Cir. 1991).

In order for a court to conclude that there are no genuine issues of material fact, the court must be satisfied that no reasonable trier of fact could have found for the non-movant, or, in

other words, that the evidence favoring the non-movant is insufficient to enable a reasonable jury to return a verdict for the non-movant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n.4 (1986). In making this determination, the court should review all the evidence in the record, giving credence to the evidence favoring the non-movant as well as the "evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that evidence comes from disinterested witnesses." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000).

> II. **Defendants are entitled to summary judgment on Count 1 of Plaintiff's Complaint.**

Both parties move for summary judgment on Count 1, which alleges that, in violation of § 332 of the Telecommunications Act, Defendants' denial of administrative approval amounts to "[unreasonable discrimination] among providers of functionally equivalent services." 47 U.S.C. § 332(c)(7)(B)(i)(I) (2012). Plaintiff alleges that "two existing flag pole towers that are identical in height to the Alta Stealth Tower and that were also in commercial districts in the City had been previously administratively approved by the City." Docket no. 1 at 11. According to Plaintiff, "[t]he Alta Stealth Tower would be used to offer functionally equivalent services to the two existing flag pole towers." *Id*. Therefore, Plaintiff argues, Defendants' "failure to approve a building permit for the Alta Stealth Tower amounts to unreasonable discrimination among providers of functionally equivalent services." *Id*. It is undisputed that Plaintiff merely "constructs, owns, and manages wireless telecommunications facilities in Texas and elsewhere," and that it "leases space on its facilities to national and regional wireless carriers who provide personal and advanced wireless services." Docket no. 36 at 1. As such, Defendants contend, and the Court agrees, that Plaintiff cannot be considered a "provider of services" under this provision of the Act, and Count 1 must fail as a matter of law.

"Plain statutory language is the most instructive and reliable indicator of Congressional intent." *Martinez v. Mukasey*, 519 F.3d 905, 909 (5th Cir. 2008). As such, the "first step in interpreting a statute is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997). If it does, a court should give effect to that meaning. *See id*. "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Id*. at 341. "We do not look at language in isolation, as it is important to examine the statute as a whole and [to be] mindful of the linguistic choices made by Congress." *In re Settoon Towing, L.L.C.*, No. 16-30459, 2017 WL 2486018, at *3 (5th Cir. June 9, 2017) (internal quotations omitted).

The plain language of the statutory provision at issue mandates the conclusion that it does not apply to Plaintiff. The statute provides that: "[t]he regulation of the placement, construction, and modification of personal wireless service facilities by any State or local government or instrumentality thereof . . . shall not unreasonably discriminate among providers of functionally equivalent services . . . ." 47 U.S.C. § 332(c)(7)(B)(i)(I) (2012). In other words, this provision prohibits unreasonable discrimination among service providers that are functionally equivalent. Clearly, to be protected by this antidiscrimination rule, one must be a "provider of service" (a "service provider"). Plaintiff is not, and thus it cannot seek relief under this provision of the Act.

First, the most natural understanding of the meaning of "service provider," at least in the telecommunications context, is that it refers to wireless carriers, like Verizon and Sprint. As a matter of common usage, the average person would likely understand as much if approached on the street and asked, "Who is your service provider?" A common understanding of what a service provider is does not encompass Plaintiff's role in the industry.

This interpretation is validated by other provisions of the Act. In particular, 47 U.S.C. § 153(53) provides that: "[t]he term 'telecommunications service' means the offering of telecommunications for a fee directly to the public . . . regardless of the facilities used." 47 U.S.C. § 153(53) (2012). Under this definition, Plaintiff cannot be a provider of telecommunications services because it plainly does not offer those services directly to the public. As Plaintiff's own evidence admits, Plaintiff merely constructs and manages the facilities through which wireless carriers provide consumers with telecommunication services. Docket no. 36 at 1. This provision also recognizes the general distinction between the provision of a service and the facilities used to provide that service. The importance of this distinction is bolstered by § 153(52), which provides that: "[t]he term 'telecommunications equipment' means equipment, other than customer premises equipment, used by a carrier to provide telecommunications services . . . ." *Id*. § 153(52). Together, these definitions make clear that Plaintiff is not a provider of telecommunications services; Plaintiff is a provider of telecommunications *equipment*. As a result, Defendants are entitled to summary judgment on Count 1.

### III. Plaintiff is not entitled to summary judgment on Count 3 of its Complaint.

#### a. Substantial evidence review; meaning of "stealth tower"

Plaintiff moves for summary judgment on Count 3 of its Complaint. Docket no. 32 at 7. Count 3 alleges that Defendants' denial of Plaintiff's permit application amounts to a violation of § 332 of the Telecommunications Act, which provides: "[a]ny decision by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless service facilities shall be in writing and supported by substantial evidence contained in a written record." 47 U.S.C. § 332(c)(7)(B)(iii) (2012). In its Motion, Plaintiff seeks to show that, as a matter of law, Defendants' decision to deny Plaintiff's building permit was not supported by

substantial evidence in a written record. Docket no. 32 at 16-18. The Court finds that Plaintiff has failed to make such a showing.

"A finding of substantial evidence requires more than a mere scintilla and less than a preponderance." *U.S. Cell. Corp. v. City of Wichita Falls, Tex.*, 364 F.3d 250, 255 (5th Cir. 2004) (internal quotations omitted). A municipality "need only demonstrate that [it] had some reasonable evidence to support the conclusion that the proposal did not conform." *Id*. at 259. "The reviewing court must take into account contradictory evidence in the record," but it "may not re-weigh the evidence or substitute its judgment for the judgment of the local government . . . . Substantial evidence review is therefore highly deferential." *Id*. at 256 (internal quotations omitted). "The substantial evidence standard limits the types of reasons a zoning authority may use to justify its decision . . . . [G]eneralized concerns about aesthetics or property values do not constitute substantial evidence." *Id*. at 256. However, "[a]esthetic concerns may be a valid basis for denial of a permit *if* substantial evidence of the visual impact of the tower is before the board." *Preferred Sites, L.L.C. v. Troup Cty.*, 296 F.3d 1210, 1219 (11th Cir. 2002) (emphasis in original); *see also Omnipoint Corp. v. Zoning Hearing Bd. of Pine Grove Twp.*, 181 F.3d 403, 408 (3d Cir. 1999) (noting that denials "for aesthetic reasons . . . are consistent with Congress' intent to allow localities to accommodate traditional zoning considerations"). Further, "the locality must provide or make available its reasons at essentially the same time as it communicates its denial." *T-Mobile S. v. City of Roswell, Ga.*, 135 S. Ct. 808, 816 (2015).

A judicial determination of whether a local authority's decision to forbid construction of a telecommunications tower was supported by substantial written evidence is guided by the applicable zoning laws. *See U.S. Cell.*, 364 F.3d at 256 ("Because the Telecommunications Act is centrally directed at whether the local zoning authority's decision is consistent with the

applicable zoning requirements, courts have consistently required that the challenged decision accord with applicable zoning law."). Thus, the inquiry at this stage is whether the Zoning Board's determination that Plaintiff's proposed structure would not constitute a "stealth tower" under the Code was supported by substantial evidence in a written record.

The parties disagree with respect to the meaning of the term "stealth tower" as it is used in the Code. Plaintiff's position is that, under the Code, "a tower that is designed to resemble a flag pole, with all antennas hidden inside the pole and with a flag attached, is a 'stealth tower.'" Docket no. 32 at 18. In other words, according to Plaintiff, a "stealth tower" is any structure that is designed to and thereby does hide the fact that it is a telecommunications tower, regardless of where it is erected. Defendants, on the other hand, argue that "[t]o make a determination regarding a cellular tower's qualification as 'stealth,' the contextual surroundings of the proposed location are critical." Docket no. 42 at 2. According to Defendants, for example, a structure that qualifies as a "stealth tower" in a dense urban area would not necessarily qualify as such in a rural neighborhood. Thus, whether there was substantial evidence in support of Defendants' decision necessarily turns, in part, on the meaning of "stealth tower" under the Code.

"We apply the same principles used to construe statutes to construe municipal ordinances." *BCCA Appeal Grp. v. City of Houston*, 496 S.W.3d 1, 20 (Tex. 2016). "When construing a statute, our primary objective is to ascertain and give effect to the Legislature's intent." *TGS-NOPEC Geophys. Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011). "To discern that intent, we begin with the statute's words." *Id*. And when a statutory term is undefined, Texas courts "consult dictionaries to discern the natural meaning." *Epps v. Fowler*, 351 S.W.3d 862, 866 (Tex. 2011). In this context, "[i]f there is vagueness, ambiguity, or room for policy

determinations in a statute or regulation . . . we normally defer to the agency's interpretation unless it is plainly erroneous or inconsistent with the language of the statute, regulation, or rule." *TGS-NOPEC Geophys.*, 340 S.W.3d at 438; *see also Sw. Royalties, Inc. v. Hegar*, 500 S.W.3d 400, 405 (Tex. 2016) ("[D]eferring to an agency's construction is appropriate only when the statutory language is ambiguous."); *R.R. Comm'n of Tex. v. Tex. Citizens for a Safe Future and Clean Water*, 336 S.W.3d 619, 628 (Tex. 2011) ("It is precisely when a statutory term is subject to multiple understandings that we should defer to an agency's reasonable interpretation.").

"A statute is ambiguous if its words are susceptible to two or more reasonable interpretations, and we cannot discern legislative intent in the language of the statute itself." *Tex. State Bd. of Exam'rs of Marriage & Family Therapists v. Tex. Med. Ass'n*, 511 S.W.3d 28, 41 (Tex. 2017). "Whether statutory language is ambiguous is a matter of law for the courts to decide." *Sw. Royalties*, 500 S.W.3d at 405. When an ambiguity is found, the administrative agency's interpretation should be given effect as long as it is "reasonable and in accord with the statute's plain language." *R.R. Comm'n of Tex.*, 336 S.W.3d at 628.

The parties agree that "stealth tower" is not defined in the Code. Dictionary.com provides that a stealth tower is "any telecommunications tower that is disguised or hidden to blend in with nature or structures."[1] Merriam-Webster, which does not define "stealth tower," defines stealth as "the state of being furtive or unobtrusive."[2] Given these definitions, a decent argument for either Plaintiff or Defendants' interpretation of "stealth tower" could be made. For example, Plaintiff could argue that since its proposed telecommunications tower "is disguised" so as to look like a flagpole, it fits the Dictionary.com definition of stealth tower. On the other hand, Defendants could argue that there is nothing "unobtrusive" about a 150-foot-tall flagpole in the

---

[1] *Stealth Tower Definition*, DICTIONARY.COM, http://dictionary.com/browse/stealth-tower (last visited June 14, 2017).
[2] *Stealth Definition*, MERRIAM-WEBSTER, http://merriam-webster.com/dictionary/stealth.

10

middle of a rural, residential area. Both of these arguments would be reasonable and supported by the plain language of the Code. Since the term "stealth tower," as it is used in the Code, is subject to more than one reasonable interpretation, its meaning is ambiguous.

Given that the meaning of "stealth tower" is ambiguous, Defendants' interpretation should be given effect[3] as long as it is not "plainly erroneous or inconsistent with the language of the statute." *TGS-NOPEC Geophys.*, 340 S.W.3d at 438. Considering the plain language and context of the ordinance, and the applicable dictionary definitions, Defendants' interpretation is a reasonable one. Thus, for purposes of this analysis, the Court assumes that a telecommunication tower's surroundings are indeed relevant as to whether it can be considered a "stealth tower" under the Code.

### b. Plaintiff failed to meet its initial burden.

Since Plaintiff bears the burden of proof on Count 3, in order to succeed on summary judgment, Plaintiff must provide evidence that "[forecloses] the possibility"[4] that Defendants' denial of administrative approval was based on "substantial evidence contained in a written record."[5] Having established that a telecommunication structure's surroundings are relevant to whether it is a "stealth tower," and that "[s]ubstantial evidence review is . . . highly deferential,"[6] Plaintiff's initial burden is an especially heavy one, and the Court finds that Plaintiff has failed to carry it.

To satisfy its initial burden, Plaintiff's evidence needs to show that, at the time of its decision, the Zoning Board could not possibly have had tangible evidence that reasonably

---

[3] *See TGS-NOPEC Geophys.*, 340 S.W.3d at 438 ("[T]he Comptroller is the administrative agency charged with enforcing the tax code, and her construction of the code is therefore entitled serious consideration."). Similarly, the City Planners and the Zoning Board are the administrative agencies charged with enforcing the City's zoning ordinances.
[4] *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).
[5] 47 U.S.C. § 332(c)(7)(B)(iii).
[6] *U.S. Cell.*, 364 F.3d at 256.

supported its contention that the proposed tower would not "blend into its contextual surroundings." Docket no. 36-18 at 2. That Plaintiff has failed to make such a showing is well illustrated by Exhibit G (Docket no. 36-11), an attachment to Plaintiff's appeal to the Zoning Board. Exhibit G includes photographs depicting six different street-level viewpoints of Plaintiff's proposed tower. *See* Docket no. 36-11 at 10-21. Corresponding to each viewpoint are two separate images: the first shows the viewpoint as it currently exists, and the second shows what it would look like after construction of Plaintiff's tower. The latter set of images ("the Photo Simulations") was created by superimposing to-scale illustrations of the tower onto the photographs of the viewpoints as they currently exist. Neither party challenges the accuracy of these depictions.

Exhibit G leaves open the possibility, and in fact it quite strongly suggests, that Defendants had reasonable grounds for finding that Plaintiff's tower would not conform to their notion of "stealth tower." In particular, Photo Simulations 1 (Docket no. 36-11 at 9) and C (Docket no. 36-11 at 15) show that the area surrounding the proposed tower is largely rural and residential. Photo Simulation C indicates that most of the homes in the area are only one-story tall, and that there is nothing on the horizon that would reach anywhere near the height of Plaintiff's tower. Further, Photo Simulations A-C depict the tower as being, easily, the most immediately noticeable structure in the vicinity. Exhibit G at least raises the possibility that the Zoning Board had evidence reasonably supportive of its contention that Plaintiff's tower would not blend into its surroundings. Thus, Plaintiff has failed to meet its initial burden, and Plaintiff's Motion, with respect to Count 3, must be denied. *See Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995) ("If the moving party fails to meet this burden, the motion must be denied, regardless of the nonmovant's response.").

For these reasons, Defendants' Motion as to Count 1 (Docket no. 31) is GRANTED, and Plaintiff's Cross-Motion as to Counts 1 and 3 (Docket no. 32) is DENIED. Summary Judgment in favor of Defendants is GRANTED as to Count 1. All other claims remain pending.

It is so ORDERED.

SIGNED this 22nd day of June, 2017.

                                              XAVIER RODRIGUEZ
                                              UNITED STATES DISTRICT JUDGE